UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **MIRUS LAKE CHARLES, LLC** | * | **CASE NO. 24-cv-00125** |
| | * | |
| **VERSUS** | * | **JUDGE DAVID C. JOSEPH** |
| | * | |
| **J4 DEVELOPMENT** | * | **MAG. JUDGE THOMAS P. LEBLANC** |

## ANSWER, AFFIRMATIVE DEFENSES and COUNTERCLAIM

**NOW INTO COURT**, through undersigned counsel, comes Defendant, J4 Development, Inc., (hereinafter, "J4 Development" or "Defendant"), and files its Answer and Affirmative Defenses to the Complaint ("Complaint") filed by Plaintiff, Mirus Lake Charles, LLC (hereinafter, "Mirus" or "Plaintiff").

## AFFIRMATIVE DEFENSES

J4 Development asserts the following affirmative defenses:

### *First Defense*

Mirus or third parties for whom J4 Development has no legal responsibility caused the damages Mirus alleges in its Complaint.

### *Second Defense*

Mirus's claims are barred due to its own contractual breaches and/or other fault.

### *Third Defense*

Mirus's claims are barred, in whole or in part, to the extent its own contributing and/or comparative fault caused its alleged damages.

### *Fourth Defense*

Mirus failed to mitigate and/or aggravated its alleged losses, injuries, and/or damages.

### *Fifth Defense*

Mirus's claims are barred by the doctrines of consent, waiver, release, payment, estoppel, and/or accord and satisfaction.

### *Sixth Defense*

J4 Development affirmatively pleads, as if copied in full herein, the provisions of the contract between J4 Development and Defendants-in-Counterclaim,[1] which operate to bar Mirus's claims in whole or part.

### *Seventh Defense*

Mirus is not entitled to any award of actual damages, interest, attorneys' fees, or costs against J4 Development.

### *Eighth Defense*

If and only to the extent that Mirus would otherwise be entitled to any form of damages, J4 Development is entitled to an offset in the amount of the damages that Defendants-in-Counterclaim's breaches have caused J4 Development.

### *Ninth Defense*

J4 Development has been relieved of any obligations it may otherwise have owed Mirus under the doctrine of anticipatory breach.

### *Tenth Defense*

Defendant reserves the right to supplement and amend its affirmative defenses as merited by further investigation and discovery.

---

[1] "Defendants-in-Counterclaim" means Mirus and Commonwealth Development Corporation of America ("Commonwealth"), collectively.

## **ANSWER TO COMPLAINT**

AND NOW, further responding specifically to the numbered paragraphs contained in Mirus's Complaint, J4 Development denies each allegation except as may be hereinafter expressly admitted, and avers as follows:

### **PARTIES**

1.

J4 Development denies the allegations of Paragraph 1 of the Complaint for lack of sufficient information to justify a belief therein.

2.

J4 Development admits that it is a Texas corporation with its principal place of business in Texas and that it is authorized to do business in Louisiana. J4 Development denies the remaining allegations of Paragraph 2 of the Complaint.

### **JURISDICTION AND VENUE**

3.

J4 Development admits only that it is a citizen of Texas for diversity jurisdiction purposes and that the amount in controversy, including J4 Development's counterclaim, exceeds $75,000. The remainder of Paragraph 3 of the Complaint consists of legal conclusions that do not require a response.

4.

J4 Development admits only that complete diversity, as that term is used for jurisdictional purposes, exists. The remainder of Paragraph 4 of the Complaint consists of legal conclusions that do not require a response.

5.

J4 Development admits that venue is proper in this District and that the project at issue lies within this District. J4 Development denies the remaining allegations of Paragraph 5 of the Complaint.

6.

Paragraph 6 of the Complaint is a legal conclusion about venue that does not require a response. J4 Development denies that Mirus sustained any damages anywhere, but again, J4 Development agrees that venue is proper here.

**GENERAL ALLEGATIONS**

7.

Paragraph 7 of the Complaint is denied as written. J4 Development admits upon information and belief that Mirus is an owner of the Property (as that term is used in the Complaint).

8.

Paragraph 8 of the Complaint is a general background statement about Hurricane Laura. J4 acknowledges that it is generally accurate, if incomplete.

1.[2]

J4 Development admits that it entered into a contract with Defendants-in-Counterclaim in connection with certain work to be performed at the Property. That contract is a written document, and J4 Development asserts that the document speaks for itself and is the best evidence of its contents and meaning. J4 Development denies the allegations of Paragraph 1 of the Complaint to the extent they fail to fully and accurately reflect the contract.

---

[2] The Complaint restarts its numbering with this paragraph, so this Answer does likewise.

2.

Paragraph 2 of the Complaint refers to a contract that is a written document, and J4 Development asserts that the document speaks for itself and is the best evidence of its contents and meaning. J4 Development denies the allegations of Paragraph 2 of the Complaint to the extent they fail to fully and accurately reflect the contract.

3.

Paragraph 3 of the Complaint refers to a contract that is a written document, and J4 Development asserts that the document speaks for itself and is the best evidence of its contents and meaning. J4 Development denies the allegations of Paragraph 3 of the Complaint to the extent they fail to fully and accurately reflect the contract.  J4 Development admits that the partial quotation reflected in Paragraph 3 appears in the contract.

4.

Paragraph 4 of the Complaint refers to a contract that is a written document, and J4 Development asserts that the document speaks for itself and is the best evidence of its contents and meaning. J4 Development denies the allegations of Paragraph 4 of the Complaint to the extent they fail to fully and accurately reflect the contract.  J4 Development admits that the partial quotation reflected in Paragraph 4 appears in the contract.

5.

Paragraph 5 of the Complaint refers to a contract that is a written document, and J4 Development asserts that the document speaks for itself and is the best evidence of its contents and meaning. J4 Development denies the allegations of Paragraph 5 of the Complaint to the extent they fail to fully and accurately reflect the contract.  J4 Development admits that the partial quotation reflected in Paragraph 5 appears in the contract.

6.

J4 Development denies the allegations of Paragraph 6 of the Complaint.

7.

J4 Development denies the allegations of Paragraph 7 of the Complaint.

8.

J4 Development denies the allegations of Paragraph 8 of the Complaint.

9.

J4 Development denies the allegations of Paragraph 9 of the Complaint.

10.

J4 Development denies the allegations of Paragraph 10 of the Complaint.

11.

J4 Development denies the allegations of Paragraph 11 of the Complaint.

12.

J4 Development lacks sufficient information to admit or deny the allegations of Paragraph 12 of the Complaint.

13.

J4 Development denies the allegations of Paragraph 13 of the Complaint.

**COUNT ONE – BREACH OF CONTRACT**
**(FAILURE TO COMPLETE WORK)**

14.

In response to Paragraph 14 of the Complaint, which merely incorporates prior allegations, J4 Development incorporates the foregoing responses.

15.

Paragraph 15 of the Complaint refers to a contract that is a written document, and J4 Development asserts that the document speaks for itself and is the best evidence of its contents and meaning. J4 Development denies the allegations of Paragraph 15 of the Complaint to the extent they fail to fully and accurately reflect the contract.

16.

Paragraph 16 of the Complaint is a legal conclusion that does not require a response. To the extent Paragraph 16 suggests that J4 failed to perform an obligation, J4 Development denies that allegation.

17.

J4 Development denies the allegations of Paragraph 17 of the Complaint.

18.

J4 Development denies the allegations of Paragraph 18 of the Complaint.

19.

J4 Development denies the allegations of Paragraph 19 of the Complaint.

20.

Paragraph 20 of the Complaint is a statement about what Mirus seeks and therefore does not require a response. J4 Development denies that Mirus has any entitlement to damages.

21.

Paragraph 21 of the Complaint is a statement about what Mirus seeks and therefore does not require a response. J4 Development denies that Mirus has any entitlement to damages or other relief.

## COUNT TWO – BREACH OF CONTRACT
## (FAILURE TO PAY SUBCONTRACTORS)

22.

In response to Paragraph 22 of the Complaint, which merely incorporates prior allegations, J4 Development incorporates the foregoing responses.

23.

Paragraph 23 of the Complaint is a legal conclusion that does not require a response. To the extent Paragraph 23 suggests that J4 failed to perform an obligation, J4 Development denies that allegation.

24.

J4 Development denies the allegations of Paragraph 24 of the Complaint.

25.

J4 Development denies the allegations of Paragraph 25 of the Complaint.

26.

J4 Development denies the allegations of Paragraph 26 of the Complaint.

27.

J4 Development denies the allegations of Paragraph 27 of the Complaint.

28.

Paragraph 28 of the Complaint is a statement about what Mirus seeks and therefore does not require a response. J4 Development denies that Mirus has any entitlement to damages.

29.

Paragraph 29 of the Complaint is a statement about what Mirus seeks and therefore does not require a response. J4 Development denies that Mirus has any entitlement to damages or other relief.

J4 Development further denies the statements and claims made in the Complaint's prayer for relief.

AND NOW, assuming the posture of plaintiff-in-counterclaim, J4 Development states as follows:

## COUNTERCLAIM

1. J4 Development, Inc. ("J4 Development"), plaintiff-in-counterclaim, is a Texas corporation with its principal place of business in Texas. It is authorized to do business in Louisiana.

2. Mirus Lake Charles, LLC ("Mirus"), hereby made defendant-in-counterclaim, is a Louisiana liability company authorized to do business in Louisiana. According to the Complaint, Mirus is a citizen of Wisconsin for purposes of evaluating diversity jurisdiction.

3. Made additional defendant-in-counterclaim is Commonwealth Development Corporation of America ("Commonwealth"), a Wisconsin corporation authorized to do business in the State of Louisiana with its principal place of business in Wisconsin.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because J4 Development's claims against Mirus and Commonwealth are closely related to Mirus's claims in the original action, and they form a part of the same case or controversy.

5. Venue is proper because the construction project at issue is located in this District, and therefore many of the events relevant to this lawsuit occurred here.

**FACTS**

6.  J4 Development was the general contractor on the Fairview Crossing Apartments project in Lake Charles, Louisiana ("Property"), which, upon information and belief, is owned by Mirus. J4 Development performed demolition, mitigation, and build-back work on the Property related to damage incurred due to Hurricane Laura and Hurricane Delta ("Project") pursuant to a written September 30, 2020, Direct Payment and Work Authorization Contract ("Contract") between J4 Development and Defendants-in-Counterclaim.

7.  On the face of the Contract, in the space for "Owner," the owner's name is filled in with the name "Kristi Morgan." Ms. Morgan's email address is given as k.morgan@commonwealthco.net.

8.  The word "Mirus" does not appear on the Contract.

9.  At the time of the execution of the Contract, Defendants-in-Counterclaim did not advise J4 Development that the Project was owned by Mirus rather than Commonwealth.

10. J4 Development timely and properly provided the labor, materials, work, and services required by the Contract and otherwise fulfilled its obligations thereunder for which J4 Development was owed (after accounting for the compromise described below) a total of $12,197,165.68. Notwithstanding J4 Development's proper performance and completion of the Project in accordance with the Contract (less only certain completion work in portions of the Project that could not be performed because of Defendants-in-Counterclaim's failure to supply power), Defendants-in-Counterclaim have failed to timely pay J4 Development in full for amounts overdue and owing to J4 Development on the Project.

11. On or about February 15, 2021, a water pipe at the Project froze and burst, resulting in damage to portions of the Project.

12. Defendants-in-Counterclaim and J4 Development subsequently agreed that J4 Development would perform the mitigation and repair work necessary to address damages caused by the February 15, 2021, pipe freeze/burst incident ("Freeze Work") and that Defendants-in-Counterclaim would pay for that work.

13. Defendants-in-Counterclaim and J4 Development treated the Freeze Work as additional Project work, governed by the Contract, and for which additional payment would be due.

14. Upon information and belief, the damages caused by the pipe freeze/burst incident were covered by a builder's risk insurance policy issued by Housing Enterprise Insurance Company ("HEIC").

15. J4 Development timely and properly provided the labor, materials, work, and services required for the Freeze Work and otherwise fulfilled its obligations thereunder for which J4 Development is due a total of $233,621.32. Notwithstanding J4 Development's proper performance and completion of the Freeze Work, Defendants-in-Counterclaim have failed to timely pay J4 Development in full for amounts overdue and owing to J4 Development for its Freeze Work on the Project.

16. On information and belief, HEIC paid Defendants-in-Counterclaim for the Freeze Work, but Defendants-in-Counterclaim have not paid J4 Development anything for the Freeze Work.

17. Although J4 Development's contract was with Defendants-in-Counterclaim, Defendants-in-Counterclaim often required J4 Development to raise nonpayment issues with, and otherwise communicate with, the company that issued property insurance to Defendants-in-Counterclaim, International Catastrophe Insurance Managers, LLC ("ICAT").

18. Throughout the Project, Defendants-in-Counterclaim were slow to make payments, and they directed complaints to ICAT.

19. In November 2021, J4 Development and Defendants-in-Counterclaim reached a compromise pursuant to which Defendants-in-Counterclaim, through ICAT, would pay J4 Development a total of $12,100,000 (less amounts already paid) to complete the Project work. This compromise did not include any payment for the Freeze Work, which was covered under a different insurance policy.

20. Despite the compromise, promised payments to J4 Development for its Project work were slow or not made, and payments came to a halt in February 2022.

21. In March 2022, J4 Development demobilized from the Project because of a lack of payment.

22. In May 2022, in order to induce J4 Development to return to work, Defendants-in-Counterclaim, with and through its agent ICAT, reaffirmed the terms of the November 2021 compromise and promised to pay J4 Development a total of $12,100,000 (less amounts already paid) to complete the Project work, excluding any payment for the Freeze Work.

23. Defendants-in-Counterclaim further promised to execute the necessary release paperwork to document the compromise.

24. In reliance on Defendants-in-Counterclaim's promises to pay and to execute the release paperwork, J4 Development returned to work on the Project.

25. Despite their promises, Defendants-in-Counterclaim and ICAT paid nothing to J4 Development after J4 Development returned to work.

26. Defendants-in-Counterclaim further failed to execute the release paperwork.

27. In or around November 2022, J4 Development reached a further compromise with Defendants-in-Counterclaim, including again with and through its agent ICAT, that the total amount due for the Project (excluding the Freeze Work) would be reduced from $12,100,000 to $11,963,544.36, with a final payment of $2,111,293.09 due J4 Development from Defendants-in-Counterclaim for all Project work (excluding the Freeze Work).

28. Despite multiple amicable demands to Defendants-in-Counterclaim, amounts due to J4 Development for its work on the Project remain outstanding and unpaid. Specifically, Defendants-in-Counterclaim owe J4 Development the total principal sum of at least $2,344,914.41 for the Project ($2,111,293.09 for the agreed upon final payment and $233,621.32 for the Freeze Work), plus interest, costs, and attorneys' fees.

## COUNT ONE
### Breach of Contract

29. J4 Development fully performed its obligations under the Contract.

30. Defendants-in-Counterclaim breached the Contract by failing and refusing to remit payment to J4 Development for all of the work performed pursuant to the Contract.

31. Defendants-in-Counterclaim's breaches of the Contract directly and proximately caused damages to J4 Development for which it is entitled to judgment against Defendants-in-Counterclaim in the principal amount of at least $2,344,914.41, plus interest, costs, attorneys' fees, and all other damages to which J4 Development may be entitled in an amount to be proven at trial.

## COUNT TWO
### Open Account

32. Alternatively, J4 Development performed its services on the Project pursuant to an open account with Defendants-in-Counterclaim.

33. J4 Development has made multiple written demands for payment to Defendants-in-Counterclaim and over 30 days have passed since those written demands without J4

Development receiving payment of the outstanding and overdue principal balance owed to it on the Project of at least $2,344,914.41.

34. Alternatively, this Counterclaim serves as a written demand.

35. In addition to payment of the full outstanding principal balance on the open account, J4 Development is entitled to recover its reasonable attorneys' fees pursuant to La. Rev. Stat. Ann. § 9:2781, plus interest, costs, and all other damages to which J4 Development may be entitled in an amount to be proven at trial.

## COUNT THREE
### Detrimental Reliance

36. In May 2022, Defendants-in-Counterclaim represented to J4 Development that it would be paid for its Project Work according to the compromise previously reached and that Defendants-in-Counterclaim would execute the documents necessary to make that payment.

37. Defendants-in-Counterclaim made these representations to J4 Development to induce J4 Development to remobilize and continue working on the Project.

38. J4 Development justifiably and reasonably relied on Defendants-in-Counterclaim's representations, and in reliance on Defendants-in-Counterclaim's representations, J4 Development remobilized and returned to work on the Project.

39. Had Defendants-in-Counterclaim not made these representations and promises, J4 Development would not have returned to work on the Project.

40. Defendants-in-Counterclaim did not execute the necessary documents that they promised to execute; nor did Defendants-in-Counterclaim pay J4 Development for its Project work as they promised to pay.

41. As a direct and proximate result of J4 Development's reliance on Defendants-in-Counterclaim's representations, J4 Development has suffered damages. J4 Development is

entitled to recover all direct and consequential damages suffered in reliance on Defendants-in-Counterclaim's representations in an amount to be proven at trial.

## JURY DEMAND

42. J4 Development is entitled to and hereby demands a trial by jury on all triable issues.

## PRAYER FOR RELIEF

**WHEREFORE**, J4 Development, Inc., prays that, after due proceedings are had, this Court enter judgment as follows:

(a) Dismissing Mirus's Complaint with prejudice;

(b) Awarding damages to J4 Development and against Mirus and Commonwealth, solidarily, for all damages described above, plus pre- and post-judgment interest at the maximum rate allowed by law, and for its costs and attorneys' fees as provided by law; and

(c) Granting J4 Development such other and further relief to which it may be entitled.

Dated: April 1, 2024

Respectfully submitted,

**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC**

BY: */s/ M. David Kurtz*
MARK W. MERCANTE (#23867)
M. DAVID KURTZ (#23821)
JOLENE NEUMAN (#37818)
3 Sanctuary Boulevard, Suite 201
Mandeville, Louisiana 70471
Telephone: (985) 819-8400
Facsimile: (985) 819-8484
Email:  dkurtz@bakerdonelson.com
jneuman@bakerdonelson.com
mmercante@bakerdonelson.com

**ATTORNEYS FOR DEFENDANT, J4 DEVELOPMENT, INC.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of April, 2024, I electronically filed the foregoing ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

- Richard Tyler rtyler@joneswalker.com
- Graham Ryan gryan@joneswalker.com
- Casey Thibodeaux cthibodeaux@joneswalker.com

                                           */s/ M. David Kurtz*
                                           M. David Kurtz