UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

MIRUS LAKE CHARLES L L C                    CASE NO.  2:24-CV-00125

VERSUS                                      JUDGE DAVID C. JOSEPH

J4 DEVELOPMENT INC                          MAGISTRATE JUDGE LEBLANC


REPORT AND RECOMMENDATIONS

Before the Court is *Commonwealth Development Corporation of America's Motion to Dismiss Amended Counterclaim of Defendant, J4 Development, Inc., Pursuant to Federal Rule of Civil Procedure 12(b)(6)*.  Doc. 33.  Defendant J4 Development, Inc. opposes the motion [doc. 35], and Commonwealth has replied [doc. 36], making the motion ripe for resolution.  The motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, **IT IS RECOMMENDED** that the motion [doc.  33] be **GRANTED IN PART,** and that the counterclaims against Commonwealth for breach of contract and quantum meruit/unjust enrichment be **DISMISSED WITHOUT PREJUDICE.   IT IS FURTHER RECOMMENDED** that the motion be otherwise **DENIED.**

I.
PROCEDURAL BACKGROUND

This lawsuit arises from a property owner's attempt to recoup expenses incurred after a contractor allegedly abandoned remediation work at the property.  J4 Development Inc. ("J4") served as general contractor on the project at the Fairview Crossing Apartments in Lake Charles,

Louisiana (the "Property"), which is owned by Plaintiff Mirus Lake Charles, LLC ("Mirus"). Doc. 28, pp. 2–3.

Mirus filed a breach of contract claim, alleging that J4 prematurely halted its work after contracting to "secure, preserve, protect, and/or repair" the Property, which was damaged first by hurricanes in 2020 and later by a freeze event in early 2021. Doc. 1. J4 counterclaimed, alleging that it was forced to discontinue work because it was no longer being paid. Docs. 4, 28. The contract referenced in both complaint and counterclaim is a Direct Payment and Work Authorization Contract (the "Contract") dated September 30, 2020.[1] Docs. 1, 28. Although Mirus and J4 agree that the Contract authorized J4's work at the Property, they disagree as to which entity entered into and was bound by the Contract. Mirus alleges in its Complaint that "Mirus and J4 Development entered into" the Contract. Doc. 1, p. 3. By contrast, J4's counterclaim, as amended, alleges that defendant-in-counterclaim Commonwealth Development Corporation of America ("Commonwealth") "entered into the Contract with J4 Development for the Project." Doc. 28, p. 3, ¶¶ 8–9. The dispute as to the contracting party is one of the issues at the heart of the motion currently before the court.

The court granted Commonwealth's previous motion to dismiss [doc. 17], dismissing J4's claims for breach of contract, suit on open account, and detrimental reliance against Commonwealth, without prejudice and with leave to amend. Docs. 26, 27. Commonwealth now moves to dismiss *J4 Development Inc.'s First Amended Counterclaim* [doc. 28] (the "Amended Counterclaim"), arguing that J4 again fails to state a claim against Commonwealth on which relief may be granted, per Rule 12(b)(6) of the Federal Rules of Civil Procedure. Commonwealth

---

[1] The Contract was attached to the first motion to dismiss filed by Commonwealth Development Corporation of America, at doc. 17, att. 3.

describes the Amended Counterclaim as "simply a rehash of the deficient allegations in the dismissed original counterclaim," that is "utterly lacking in factual matter, that accepted as true," would state a plausible claim for relief as to any of the causes of action J4 brings against Commonwealth.  Doc. 33, att. 1, p. 6–7.

## II.
### RULE 12(B)(6) STANDARD

A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of a plaintiff's allegations.  When ruling on a 12(b)(6) motion, the court accepts all factual allegations as true and views them in a light most favorable to the nonmoving party. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011); *Gogreve v. Downtown Develop. Dist.*, 426 F. Supp. 2d 383, 388 (E.D. La. 2006).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief [ . . . is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Rule 8(a)(2) of the Federal Rules of Civil Procedure continues to require only a "short and plain statement of the claim showing that the pleader is entitled to relief."  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555)(omission original; internal quotation marks omitted).  The "plausibility" standard

announced by the Supreme Court in *Bell Atlantic Corp. v. Twombly* "explicates" the Rule 8(a)(2) pleading standard by calling for enough factual matter, taken as true, to "raise a reasonable expectation that discovery will reveal" relevant evidence of each element of the claim. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

Although the court must accept as true all factual allegations set forth in the Amended Counterclaim, the same presumption does not extend to "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

### III.
### ALLEGATIONS OF THE AMENDED COUNTERCLAIM

J4 alleges in its Amended Counterclaim that it was underpaid for the work it performed on the Property and that it is owed "the total principal sum of at least $2,344,914.41 for the Project . . . plus interest, costs, and attorneys' fees." Doc. 28, p. 6. The Amended Counterclaim seeks judgment against both Mirus and Commonwealth as solidarily liable. *Id.* at 9. The Amended Counterclaim brings breach of contract claims as to both Mirus and Commonwealth. *Id.* at 6. In the alternative, J4 brings claims for suit on open account and quantum meruit/unjust enrichment against both Mirus and Commonwealth, and J4 brings breach of oral contract and detrimental reliance claims against Commonwealth. *Id.* at 6–8.

The Amended Counterclaim alleges that Mirus owns and maintains insurance on the Property. *Id.* at 3. Commonwealth is alleged to have been "responsible for design, construction, and property management services" for the Property, per an arrangement between Commonwealth and a different Mirus entity whereby Commonwealth receives revenues generated by "ongoing

operations" in exchange for its services.[2]  J4 alleges that, as the entity responsible for construction and property management, Commonwealth both "entered into the Contract with J4 Development for the Project" and "communicated with and directed J4 Development's work on the Project."  *Id.* The Amended Counterclaim identifies Commonwealth employees who communicated directly with J4 about various aspects of the Project, and it identifies Commonwealth—rather than Mirus—as J4's general point of contact as to the Project.  *Id.* at 2–3.

International Catastrophe Insurance Managers, LLC ("ICAT") is alleged to have issued a property insurance policy to Mirus covering the hurricane damage to the Property.[3]  *Id.* at 3.  J4 understood that Commonwealth and Mirus intended to use the proceeds from Mirus's claim under the ICAT insurance policy to pay J4 for its work on the Project.  *Id.*  This understanding is consistent in the Contract, which the court may consider on this motion.[4]  The Contract contemplates that "J4 will prepare a scope of repairs for all damages, as well as secure an agreement on the scope and costs, with your insurance company."  Doc. 17, att. 3.

The Amended Counterclaim alleges that Commonwealth maintained routine contact with both J4 and ICAT.  Doc. 28, p. 3.  Although J4 submitted its payment applications to Commonwealth, Commonwealth required J4 to raise certain issues directly with ICAT, especially

---

[2] The Amended Counterclaim alleges that, "Commonwealth and 'Mirus Partners, Inc.'" entered into an arrangement under which "Mirus 'pays cash revenues and funds generated by ongoing operations to Commonwealth and in exchange receives design, construction, and property management services from Commonwealth.'" Doc. 28, p. 2, ¶ 6 (quoting Mirus' Initial Disclosures, attached at doc. 28, att. 1, p. 2).

[3] A different insurer is alleged to have provided coverage for freeze-related damage, which J4 was also asked to remedy.  Doc. 28, p. 4.

[4] The Contract is attached to Commonwealth's original motion to dismiss.  Doc. 17, att. 3.  Although a court's review is generally limited to the pleadings in deciding a motion to dismiss, the court may also consider documents attached to the relevant pleading and the motion to dismiss, provided such documents are central to the claim and are referred to in the pleading.  *Lone StarFund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).  The Court may properly consider the contract because it is referenced in J4's amended counterclaim [doc. 28, p. 2], and it is central to J4's claims.  *Collins*, 224 F.3d at 499.

as to regard to nonpayment. *Id.* at 3–4. Nonpayment or slow payment is alleged to have been a problem throughout the course of the Project, and "[i]n March 2022, J4 demobilized from the Project because of lack of payment." *Id.* at 5.

Commonwealth is alleged to have negotiated with J4 in a series of agreements in November 2021, May 2022, and November 2022 that attempted to remedy the non-payment issues, whereby Commonwealth agreed with J4 that ICAT would disburse certain sums to fully compensate J4 for its work at the Property. *Id.* at 5–6. The Amended Counterclaim describes Commonwealth as facilitating payment agreements among itself, J4, and ICAT, and then, after payments slowed or stopped, inducing J4 to return to work with renewed promises of payment. *Id.* Ultimately, these promises were not honored, resulting in J4's counterclaims.

## IV.
### APPLICATION

A federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Accordingly, the court evaluates the substance of each claim under Louisiana law.

### A. Count One Breach of Contract

The Amended Counterclaim brings a claim against Commonwealth for breach of contract, alleging Mirus and Commonwealth breached the Contract by refusing to remit full payment despite J4's full performance, thereby causing monetary damages to J4. Doc. 28. pp. 6–7.

"To state a claim for breach of contract under Louisiana law, a plaintiff must plead: (1) the existence of the contract; (2) a breach of an obligation therein; and (3) damages resulting from the breach." *Shaw v. Restoration Hardware, Inc.*, 93 F.4th 284, 289 (5th Cir. 2024). "Under Louisiana law, no action for breach of contract may lie in the absence of privity of contract between the parties." *Beauregard Quarters, LLC v. Action Concrete Constr., Inc.*, 2021 WL 2942514, at *3

(M.D. La. Jul. 13, 2021) (citing *Pearl River Basin Land and Dev. Co., L.L.C. v. State, ex rel. Governor's Office of Homeland Sec. and Emergency Preparedness*, 29 So. 3d 589, 592 (La. App. 1 Cir. 2009)).

In dismissing the original counterclaims, the court found no plausible factual basis to assume privity of contract between Commonwealth and J4 because there is no mention of "commonwealth" in the Contract other than in the domain name for the individual signatory's e-mail address.  Docs. 26, 27; *see also* doc. 17, att. 3.  J4 was granted leave to amend its pleadings to clarify the factual basis for this claim.  The Amended Counterclaim now alleges that Commonwealth "entered into the Contract with J4 Development for the Project," [doc. 28, p. 3, ¶ 8], and J4 argues that the court must accept this allegation as true for the purposes of this motion, characterizing it as a purely factual allegation.

Considering that the Contract itself is before the court and referenced in the pleadings and that its interpretation is a question of law, *see Rutgers, State Univ. v. Martin Woodlands Gas Co.*, 974 F.2d 659, 661 (5th Cir. 1992), the question as to which party entered into the Contract must be at least a mixed question of law and fact.  In this context, the court is not required to accept as true J4's allegation as to the identity of the contracting party.  Doing so would require the court to ignore other allegations and material in the pleadings suggesting the opposite.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth."); *Mora v. Univ. of Texas Sw. Med. Ctr.*, 469 F. App'x 295, 299 (5th Cir. 2012) ("this allegation is contradicted by the other facts alleged in the complaint, making the claim implausible on its face.").

The pleadings contain numerous indications that Mirus, not Commonwealth, was the contracting party in this case:  Mirus's Complaint identified Mirus as the contracting party [doc. 1, p. 3]; the signatory to the contract was a Mirus employee, according to initial disclosures attached to J4's Amended Counterclaim;[5] and the contracting party was identified in the Contract as "Owner" of the property (by selecting the box for "Owner" rather than "Agent") [doc. 17, att. 3, p. 1], who authorized J4 to work directly with its insurer on scope and cost.  Mirus—not Commonwealth—is both owner and insured, per the allegations of J4's counterclaim.  Doc. 28, pp. 3–4, ¶¶ 8, 10–11.

Here, the context provided in the Amended Counterclaim renders implausible the allegation that Commonwealth and not Mirus contracted with J4. "Where context provides one and only one answer, the absence of documentary or statutory support does not require a court to ignore the obvious or accept the incredible. This is true even at the early stage of Rule 12(b)(6)." *Van Deelen v. Cain*, 628 F. App'x 891, 895 (5th Cir. 2015).  Accordingly, it is recommended that the district judge disregard the allegation that Commonwealth entered into the Contract with J4, and it is further recommended that J4's breach of contract claim be dismissed as to Commonwealth for failure to plausibly allege the existence of a written contract between J4 and Commonwealth. This recommendation is not intended to function as a finding as to the identity of the contracting party; it merely assesses the facial plausibility of the breach of contract claim against Commonwealth on the pleadings currently before the court.  Because this recommendation only concerns the breach of contract claims against Commonwealth, J4's breach of contract claims against Mirus survive.

---

[5] Kristi Morgan executed the Contract.  Doc. 17, att. 3.  According to Mirus' initial disclosures, which are attached to J4's Amended Counterclaim, and may therefore be considered by the court on this motion, Kristi Morgan is an employee of Mirus Lake Charles, LLC.  Doc. 28, att. 1, p. 1.

**B.  Count Two, Open Account**

In the alternative, the Amended Counterclaim brings suit on open account against Commonwealth, alleging that J4 has made multiple written demands for payment without receiving the outstanding and overdue principal balance.

A suit on an open account is provided for in La. R.S. § 9:2781, which defines an open account as any account that has a full or partial balance that is past due, including debts incurred for professional services. La. R.S. § 9:2781(D).  "A contractor relationship in which the contractor 'purchase[s] all of the materials and perform[s] the labor necessary' and sends a bill upon completion can fall under the open account statute." *24/7 Restoration Specialists, LLC v. Young*, 634 F. Supp. 3d 287, 291 (E.D. La. 2022).  But a complaint may fail to state a cause of action as a suit on open account by neglecting to provide details that characterize an open account, such as "whether the alleged agreement defined how the cost of [the contractor's] services was to be calculated[,]" the scope of the work to be performed, and the timeframe, if any, for that work. *Id.* (granting leave to amend open account claim).

Nonetheless, the Louisiana Supreme court has emphasized that courts must apply the plain language of the open account statute as written. *Frey Plumbing Co. v. Foster*, 2007-1091 (La. 2/26/08), 996 So. 2d 969, 972.  In *Frey Plumbing Co. v. Foster*, the Louisiana Supreme Court held that a trial court erred in finding that a suit did not constitute a claim on open account, where the facts were very simple:  defendant had hired a plumber to repair an underground pipe at her residence; the plumber issued an invoice for the plumbing work performed; the bill remained unpaid for more than six months; and the plumber sent written demands during that time to no avail.  *Id.* at 970 (holding that the open account statute requires neither multiple transactions between the parties nor the expectation of future transactions).

In dismissing J4's original open account counterclaim, the court found a failure to allege Commonwealth's relationship to the alleged open account or the agreement that gave rise to it. The Amended Counterclaim clarifies that Commonwealth acted in the role of property manager for the Project, directing J4's work, receiving J4's periodic payment applications, and occasionally requiring J4 to amend those payment applications to correspond more closely to the insurer-approved scope of work. Doc. 28, p. 7. Commonwealth is alleged to have been instrumental in the agreement to treat additional Freeze Work as "Project Work" governed by the Contract. *Id.* at 4. Commonwealth is further alleged to have made promises of payment to induce J4 to return to work at the Property and to have participated in negotiations among J4 and ICAT to fix the total amount due for the Project and the amount of the final payment. *Id.* at 5–6.

The amended allegations are sufficient to describe an open account and tie Commonwealth to it. The contractual language and the description of the parties' actions suggest key aspects of the agreement—including the total cost—were left undetermined. "The Fifth Circuit has noted that an undetermined total cost is '[a] hallmark of an open account.'" *24/7 Restoration Specialists, LLC*, 634 F. Supp. 3d at 291 (citation omitted) (describing an open account as one open to modification and left open with a fluctuating balance until convenient to settle and close). The amended allegations suggest a relationship analogous to a credit account, with the total price left open and subject to adjustment during the pendency of the work, until finally settled in negotiations among ICAT, J4, and Commonwealth. Additionally, on the allegations summarized above, Commonwealth was in the position to obligate itself and/or Mirus to pay for J4's services on an open account basis, rendering the allegations facially plausible.

Commonwealth urges that the open account claim should be dismissed because it lacks allegations as to whether the total price was left open, other business transactions between the

parties, the extension of a line of credit, and expectations of other dealings.  Doc. 33, att. 1, p. 20.

Considering the allegations summarized above, the Louisiana Supreme Court's reasoning in *Frey Plumbing*, and the definition of an open account as "any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions," La. R.S. § 9:2781(D), it would be premature to determine at this point that J4's open account claim must be dismissed.  *See Precision Cooling Towers Inc. v. Indorama Ventures Olefins LLC*, No. 2:21-CV-03708, 2022 WL 1073590, at *3 (W.D. La. Apr. 8, 2022).  Accordingly, it is recommended that the motion be denied as to the open account claim against Commonwealth.

## C.  Count Three, Breach of Verbal Contract

In the further alternative, the Amended Counterclaim brings a claim for breach of oral contract against Commonwealth.  Doc. 28, p. 7.  "To state a claim for breach of a verbal contract as defined by Louisiana law, a plaintiff must plead: (1) the existence of the contract; (2) a breach of an obligation therein; and (3) damages resulting from the breach." *Lagarde Ltd. v. Fed. Express Corp.*, No. CV 25-1412, 2025 WL 2337133, at *6 (E.D. La. Aug. 13, 2025) (citing *Shaw v. Restoration Hardware*, *Inc.*, 93 F.4th 284, 289 (5th Cir. 2024).  "A contract is formed by the consent of the parties established through offer and acceptance[,]" and unless the law prescribes otherwise, "offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent."  La. Civ. Code art. 1927.

The Amended Counterclaim alleges that after J4 halted work on the Project due to nonpayment, J4 and Commonwealth, with and through ICAT, came to an agreement whereby Mirus and/or Commonwealth would pay J4 a total "$11,963,544.36 for J4 Development's work on the Project, resulting in a corresponding additional payment to J4 Development of

$2,111,293.09." Doc. 28, p. 7, ¶ 42.  J4 characterizes this agreement as a verbal contract between Commonwealth and J4.  *Id.*  This verbal contract is distinct from the obligations undertaken in the original written Contract; the verbal contract might more aptly be described as agreement to get J4 paid the final outstanding amounts owed toward the end of the relationship.  J4 further alleges that Commonwealth breached this agreement by failing to make the agreed upon payment despite J4's performance, and that this breach caused J4 damages "for which it is entitled to judgment against Commonwealth in the principal amount of at least $2,111,293.09. . . ."  *Id.* at p. 8, ¶ 44.

J4's counterclaim for breach of verbal contract pleads the requisite elements and has sufficient facial plausibility to survive the motion to dismiss.  J4 alleges that, in its capacity as property manager, Commonwealth verbally contracted with J4 to provide certain services in exchange for certain sums, J4 provided those services, Commonwealth did not perform its obligation to remit the sums, and J4 thereby sustained damages.  Accordingly, it is recommended that the motion be denied as to the breach of verbal contract claim.

**D.  Count Four, Quantum Meruit/ Unjust Enrichment**

In the further alternative, J4 brings a claim for quantum meruit and/or unjust enrichment, alleging that J4 worked on the Project with the reasonable expectation of just compensation, and that Mirus and Commonwealth have been unjustly enriched thereby.  Doc. 28, p. 8.  Quantum meruit is not recognized as a cause of action (*i.e.*, as a substantive basis of recovery) under Louisiana law, so this claim must be analyzed under the theory of unjust enrichment.  *SMP Sales Mgmt., Inc. v. Fleet Credit Corp.*, 960 F.2d 557, 560 (5th Cir. 1992); s*ee also Billy Navarre Certified Used Car Imports LLC v. Claremont Prop. Co.*, No. 2:24-CV-00085, 2025 WL 2463812, at *6 (W.D. La. Aug. 25, 2025). "To state a claim for unjust enrichment, a plaintiff must plead: (1) enrichment on the part of the defendant; (2) impoverishment on the part of the plaintiff; (3) a causal

relationship between the enrichment received by the defendant and plaintiff's impoverishment; (4) an absence of 'justification' or 'cause' for the enrichment and impoverishment; and (5) a lack of other remedy at law." *Shaw v. Restoration Hardware, Inc.*, 93 F.4th 284, 291 (5th Cir. 2024) (citing *Baker v. Maclay Props. Co.*, 94-1529, p. 18–19 (La. 1/17/95), 648 So. 2d 888, 897.).

J4 alleges that Mirus and Commonwealth received the benefit of J4's services and were thereby enriched, while J4 was simultaneously impoverished by performing that work without compensation. Doc. 28, p. 8. The Amended Counterclaim implies rather than states that the there was no justification for the enrichment and impoverishment. The Amended Counterclaim likewise implies rather than alleges a lack of another remedy at law by pleading this cause of action in the alternative to the breach of contract claim.

The only identified enrichment to the defendants-in-counterclaim is the receipt of J4's services. Doc. 28, p. 8. The Amended Counterclaim does not explain how Commonwealth could have been enriched by the receipt of J4's services. The benefits of J4's work on the Property would necessarily flow to the owner of the Property, and J4 acknowledges that Mirus is the owner of the Property. Accordingly, it is recommended that the Amended Counterclaim does not plausibly allege Commonwealth's enrichment and that J4's unjust enrichment claim against Commonwealth should be dismissed for failure to adequately plead the first element. Because this recommendation concerns only the counterclaim against Commonwealth, J4's unjust enrichment claims against Mirus survive.

## E.  Count Five, Detrimental Reliance

In the further alternative, J4 brings a claim for detrimental reliance. Under Louisiana law, a claim of detrimental reliance requires (1) a representation by conduct or word, (2) justifiable reliance, and (3) a resulting change in position to the plaintiff's detriment. *Drs. Bethea,*

*Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004); *Louisiana Off. of Risk Mgmt. v. Richard*, 2013-0890 (La. 10/15/13), 125 So. 3d 398, 402; *see also* La. Civ. Code art. 1967. The United States Court of Appeals for the Fifth Circuit has determined via *Erie* guess that "the existence of a promise is a necessary element of a detrimental-reliance claim[,]" defining "promise" to mean "an assurance to do or not do something in the future." *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 232 (5th Cir. 2018). The detrimental reliance claim is "designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence" and usually functions in the absence of an enforceable contract between the parties. *Drs. Bethea, Moustoukas and Weaver LLC,* 376 F.3d at 403 (quoting *Babkow v. Morris Bart, PLC*, 726 So.2d 423, 427 (La. Ct. App. 4th Cir. 1998)).

The original counterclaim was held to be insufficiently specific as to any representations, acts, or omissions made by Commonwealth to support a claim for detrimental reliance. Docs. 26, 27. The Amended Counterclaim now satisfies the first element of the detrimental reliance claim by alleging that Commonwealth induced J4 to return to work after J4 "demobilized from the Project because of lack of payment" by promising that J4 would be paid a total of approximately $12.1 million for its Project work (less amounts already paid) and by promising that all necessary paperwork would be submitted to ICAT to secure such payment. Doc. 28, p. 5–6. The amended allegations plausibly plead the second and third elements by alleging that J4 justifiably relied on these representations to its detriment by returning to work at the Property, thereby suffering damages in the form of uncompensated work. *Id.* at 8–9.

Because these allegations are adequate to state a claim against Commonwealth for detrimental reliance, it is recommended that the motion be denied as to this claim.

## V.
### CONCLUSION

For the reasons stated, **IT IS RECOMMENDED** that *Commonwealth Development Corporation of America's Motion to Dismiss Amended Counterclaim of Defendant, J4 Development, Inc., Pursuant to Federal Rule of Civil Procedure 12(b)(6)* [doc. 33] be **GRANTED IN PART,** and that the counterclaims against Commonwealth for breach of contract and quantum meruit/unjust enrichment be **DISMISSED WITHOUT PREJUDICE**.  **IT IS FURTHER RECOMMENDED** that the motion be otherwise **DENIED**, such that all counterclaims against Mirus Lake Charles, LLC and the counterclaims against Commonwealth for suit on open account, breach of verbal contract, and detrimental reliance survive.

Under the provisions of 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure, parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglas v. United Services Automobile Ass'n,* 79 F.3d 1415, 1429–30 (5th Cir. 1996).

**THUS DONE AND SIGNED** at Lake Charles, Louisiana, this 9th day of December, 2025.

_____
**THOMAS P. LEBLANC**
**UNITED STATES MAGISTRATE JUDGE**